(No. 49669.—

*In re* GERALD McNAMARA CHAPMAN,
Attorney, Respondent.

*Opinion filed January 27, 1978.*

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Sidney Z. Karasik, of Chicago, for respondent.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

In a five-count complaint, the Administrator of the Attorney Registration and Disciplinary Commission charged that respondent, Gerald McNamara Chapman, who was licensed to practice in Illinois on June 19, 1950, had been guilty of conduct which tends to defeat the administration of justice and bring the legal profession into

disrepute. The Hearing Board of the Attorney Registration and Disciplinary Commission recommended that respondent be suspended from the practice of law for a period of three years, and the Review Board concurred in that recommendation.

In both counts I and II respondent was charged with failure to properly represent the complainant, Mrs. Florence J. Budd, in an appeal, in count I as intervenor-appellee, and count II as appellant. Concerning count I, it was stipulated that Mrs. Budd had retained respondent to file an appellee's brief in the case of *Gibraltar Corporation, Plaintiff-Appellant, v. Flobudd Antiques, Inc., et al., Defendants-Appellees—(Florence J. Budd, Intervenor-Appellee)*, 131 Ill. App. 2d 545. Gibraltar had filed an action in the circuit court of Cook County to foreclose a deed of trust on real estate executed by Flobudd Antiques, Inc. This real estate was also involved in the litigation out of which arose the charges contained in count II. The complainant, Florence J. Budd, intervened in the foreclosure action, alleging that she was the owner of the property and that the transaction out of which the litigation arose was a subterfuge to enable Gibraltar to charge interest in excess of that permitted under the Illinois Interest Act (Ill. Rev. Stat. 1971, ch. 74, par. 1 *et seq.*). The circuit court found that there was no consideration for the conveyance from Mrs. Budd to Flobudd, that the transaction was a sham and that the loan had been made at a usurious rate of interest. It denied foreclosure, found that by reason of the usurious interest charged, the sum due Gibraltar should be reduced from $28,245.72 to $5,726.96 and entered judgment in favor of Gibraltar and against Mrs. Budd in that amount. Gibraltar appealed and counsel who had represented Mrs. Budd at trial arranged for respondent to represent her in the appeal. No brief was filed on behalf of the intervenor-appellee, Mrs. Budd, and the appellate court reversed *pro forma.* See 131 Ill. App.

2d 545.

With respect to count II it was stipulated that in an action instituted by the Attorney General against Illinois Protestant Children's Home, Inc., and Florence J. Budd the circuit court of Cook County rendered a decree adverse to Mrs. Budd and that respondent filed a notice of appeal in her behalf. No appeal was thereafter prosecuted. With respect to count III it was stipulated that following trial in the circuit court of Cook County of the case of Paul B. Sayad Company v. Trebels Millwork and Supply Corporation, in which Trebels was represented by other counsel, respondent was retained by Trebels, that he filed a post-trial motion and thereafter failed to prosecute the appeal. Although it cannot be determined from the record whether or in what amount other sums were paid respondent by Trebels, there is no dispute that Trebels, shortly after receiving a letter requesting $300 to pay for the transcript of the trial proceedings, sent respondent a check in that amount. Respondent received, endorsed, and cashed the check.

Concerning the Gibraltar appeal, respondent testified that upon receipt of Gibraltar's brief he commenced the preparation of the intervenor-appellee's brief. Because he anticipated that the Chicago Mortgage Bankers' Association would request and be granted leave to file an *amicus curiae* brief, he requested several extensions of time and after the *amicus* brief was filed, respondent requested and was granted an eighth extension of time. Shortly thereafter, at the request of the appellant and the *amicus,* the date for oral argument was advanced. Respondent testified that the notice of setting for oral argument was sent to the attorney who had been trial counsel for Mrs. Budd rather than to him, and that he was not informed of the new time for argument until shortly before the scheduled date. Having failed to file a brief prior to that date, he was of the opinion that he was precluded from presenting oral

argument, and when the case was argued he did not appear or participate. His explanation of his failure to do so was that he intended to file a brief immediately following oral argument, believing that he would encounter no difficulty in being granted leave to file such brief instanter. The appellate court opinion came down six days after oral argument. He attempted to file the intervenor-appellee's brief within the time provided for filing a petition for rehearing, but leave to do so was denied. He filed a petition for leave to appeal to this court, and the petition was denied. Both respondent and Mrs. Budd testified that respondent was paid no money for his services in connection with this matter.

In the litigation involved in count II the Attorney General had sought an injunction and other relief against Florence J. Budd, the Illinois Protestant Children's Home, Inc., and other parties. In its decree the circuit court set aside and held null and void the deed by means of which the Illinois Protestant Children's Home, Inc., had conveyed to Mrs. Budd the real estate referred to as the "Loeb property." It also set aside and declared invalid the deed from Mrs. Budd to Flobudd Antiques, Inc., and the deed of trust executed by Flobudd Antiques, Inc., to secure the loan made by Gibraltar. It found that there was due and owing from Florence J. Budd to the assignee of Gibraltar the sum of $48,601.24.

Although admittedly respondent filed a notice of appeal on behalf of Mrs. Budd, he testified that nothing further was done because of her failure to provide funds to obtain the necessary transcript. Mrs. Budd testified that one of the other parties to the litigation was possessed of a transcript of the proceedings which was available to respondent for use in the appeal. Again, no money appears to have been paid to respondent for his services, and although they do not agree on the amount paid, both respondent and Mrs. Budd testified that he had paid

certain moneys to her. Mrs. Budd testified that because of his mishandling of other litigation he had paid her approximately $2,100 or $2,200. He testified that to keep her from complaining to the disciplinary authorities he had paid her approximately $3,900. On two occasions he testified that the receipts for the sums paid her were available but later testified that his former associate, to whom he had entrusted the receipts, had, in the course of moving his office, mislaid them and they were not available.

Concerning the Trebels matter respondent testified that, because he had moved his office several times, some of his files had been lost and he had neither a clear recollection of what had transpired nor files which would explain his failure to prosecute the appeal.

Concerning both counts I and II, the Hearing Board found that respondent, by failing to prosecute the appeal, had neglected a legal matter entrusted to him, had damaged his client and, with respect to count I, had engaged in conduct involving misrepresentation. From our review of the record we agree that insofar as count I is concerned respondent had neglected a legal matter entrusted to him and, insofar as he did not candidly explain to Mrs. Budd precisely what had occurred, had to some extent engaged in conduct involving misrepresentation. In view, however, of the ultimate disposition of the litigation involving the real estate and the Gibraltar deed of trust, the record does not support the conclusion that Mrs. Budd was in any manner damaged. Whatever rights she may have had in the real estate were effectively terminated by the decree in the action brought by the Attorney General. In that case the circuit court expressly found that not only was there no evidence to sustain Mrs. Budd's contention that the real estate in question was impressed with a constructive trust in favor of her deceased husband, to which she succeeded as his sole legatee, but that there was

convincing proof to the contrary. In order to have succeeded on appeal it would have been necessary for Mrs. Budd to persuade the appellate court that the findings of the circuit court were contrary to the manifest weight of the evidence and that she had proved her case by clear and convincing evidence. We question her ability to have done so. Concerning her testimony with respect to respondent's failure to advise her of the need for a transcript in adequate time for her to procure one, and her efforts with respect to obtaining such transcript, we note that Mrs. Budd was no stranger to litigation involving the Illinois Protestant Children's Home, Inc., or court reporting services requisite to obtaining a transcript. (See *Brandes v. Illinois Protestant Children's Home, Inc.,* 33 Ill. App. 2d 319.) Although we agree with the Hearing Board and the Review Board that as charged in count I respondent neglected a legal matter entrusted to him and misrepresented certain facts to his client, we are of the opinion that their finding concerning count I that by reason of defendant's neglect Mrs. Budd suffered damage, and their findings concerning count II, are not supported by clear and convincing evidence. See Supreme Court Rule 753(c) (65 Ill. 2d R. 753(c)).

Concerning count III the evidence shows that respondent failed to prosecute an appeal, and although on this record it cannot be determined whether in fact the client was thereby damaged, Trebels, by reason of respondent's negligence, was denied an appeal.

Count IV charges respondent with failure to comply with Rule 756 in that for more than four months after being advised of his failure to pay the required fee he failed to do so. The record shows that sometime during the course of the hearing respondent paid the fee and the penalties. In count V it is charged that respondent, in violation of Rule 1.3 of the Attorney Registration and Disciplinary Commission, failed to respond to two letters

requesting information concerning the charges made by Rudolph Trebels. Respondent explained his failure to pay the required fee as an oversight and his failure to respond to the letters as resulting from the traumatic impact of the filing of a disciplinary proceeding. On these counts both the Hearing and Review Boards recommended that respondent be censured.

Citing *In re Fisher*, 15 Ill. 2d 139, respondent argues that a mere failure to take action on behalf of a client or the failure to exercise ordinary care will not of itself result in either disbarment or suspension. We do not agree. The traditionally high standards of the legal profession impose upon an attorney the duty to represent a client with zeal and diligence, and as we said in *In re Taylor*, 66 Ill. 2d 567, 571: "*** we find that neglect in the performance of an attorney's duties to a client can be sufficient to warrant disciplinary action. Suspension is a proper punishment 'where a corrupt motive and moral turpitude are not clearly shown.' (*In re Ahern* (1961), 23 Ill. 2d 69, 74 ***.)"

We consider now the question of what sanction should be imposed. The purpose of a disciplinary proceeding is to safeguard the public and maintain the integrity of the legal profession. (*In re Smith*, 63 Ill. 2d 250.) As was said in *In re Andros*, 64 Ill. 2d 419, 425-26, "While a degree of uniformity in the application of attorney discipline is desirable, each case must still be determined on its own merits." In *In re Taylor*, 66 Ill. 2d 567, in which the Hearing and Review Boards of the Attorney Registration and Disciplinary Commission had unanimously recommended a three-year suspension, we suspended the respondent for a period of one year. In that case the Administrator had filed a four-count complaint and it was found by the Hearing Board, and the findings were approved by the Review Board, that in three of the four instances involved the respondent had accepted fees and

failed to render the services for which he had been paid. Although it is difficult to make comparisons in factual situations of this type, we are of the opinion that on this record the sanction imposed should be less severe than that in *Taylor*. Concerning the matters involving Mrs. Budd, it is not disputed that respondent received no fee, and although he failed to timely file her appellee's brief, he moved for leave to file a brief during the time provided for filing a petition for rehearing, and upon denial of that motion sought leave to appeal to this court. Also to be considered are the facts that, other than the matters involved here, it does not appear that respondent has previously been charged with unprofessional conduct and that, during a portion of the period involved here, he was ill and having domestic difficulties. On this record we conclude that an appropriate sanction is that respondent be suspended for a period of three months.

*Respondent suspended.*