(No. 57375.—

*In re* GERALD McNAMARA CHAPMAN, Attorney,
Respondent.

*Opinion filed April 13, 1983.*

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

James J. Reidy, Ltd., of Chicago (James J. Reidy, of counsel), for respondent.

JUSTICE UNDERWOOD delivered the opinion of the court:

This disciplinary proceeding comes before us on the report and recommendation of the Review Board of the Attorney Registration and Disciplinary Commission (73 Ill. 2d R. 753) affirming the Hearing Board's conclusion that respondent, Gerald McNamara Chapman, was guilty

of misconduct warranting disbarment. Although respondent did not appear in the proceedings before the review or hearing boards, he sought and we granted leave to file a response in this court, treating it as we would exceptions to the Review Board's report and recommendation.

Respondent was licensed to practice law in Illinois in 1950, and during the period with which we are concerned he maintained an office in Chicago and practiced alone. In October 1979 Manuel Solotke, a fellow attorney who had represented Ben Stelzer in a malpractice lawsuit brought against another attorney, asked respondent to represent Mr. Stelzer in an appeal from the dismissal of the malpractice action. Respondent agreed to undertake the appeal, received a $500 retainer from Mr. Stelzer, and filed a notice of appeal on November 1 and the record on January 3, 1980. Although the original briefing schedule required respondent to submit a brief on February 6, the court extended the filing deadline to April 2. In March, respondent became associated with a small firm which terminated the association on September 1. He asserts in his response and in his brief that a secretary failed to integrate his diary containing the briefing schedule with the firm's diary. It is also asserted that during 1980 he suffered a "coronary incident" while playing tennis on August 2, was hospitalized until August 8, and did not resume a full work schedule until August 25. Mr. Stelzer telephoned respondent about every three months prior to August 2 to inquire about the status of his appeal, and respondent repeatedly assured him that the matter was proceeding in a normal fashion and that Mr. Stelzer had nothing to worry about. In fact, respondent failed to file a brief by April 2, 1980, and when he had still not done so by September 22, the appellate court, on its own motion, dismissed the appeal for failure to prosecute.

During the proceedings before the Hearing Board, Mr. Solotke testified that, having learned of the dismissal, he visited respondent on September 24 in order to determine why the latter had failed to prosecute the appeal and whether the case could be salvaged. Respondent did not offer any excuse, but explained only that the appeal "had got away" because he was very busy. Attorney Solotke further stated that, during a telephone conversation on September 30, respondent assured him that respondent would soon file a motion with the appellate court to vacate the dismissal and that Mr. Solotke would receive a copy of the motion. When the motion was not filed shortly thereafter, Mr. Solotke made repeated, but fruitless, efforts to contact respondent. His calls were met by a secretary's response that respondent was "in conference," and the calls were not returned. Because the time for moving to vacate the dismissal had nearly elapsed, Mr. Solotke prepared and filed the motion on October 20. After that motion was denied, Ben Stelzer directed Mr. Solotke to institute malpractice proceedings against respondent, and a $10,000 default judgment was ultimately entered in favor of Mr. Stelzer. That judgment was not satisfied, and a body attachment was outstanding at the time of the disciplinary hearing. Respondent also failed to return the $500 retainer fee.

On August 18, 1981, the Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against respondent on the basis of his mishandling of the Stelzer appeal. That complaint alleged that respondent's conduct constituted the neglect of a legal matter entrusted to him, involved dishonesty, fraud, deceit, and misrepresentation, and tended to defeat the administration of justice and bring the legal profession into disrepute. When respondent failed to file an answer or other pleading after receiving notice, the Administrator, pursuant to Commission Rule 7.1, obtained an order

deeming the allegations of the complaint to be admitted. Notice of that order and of the scheduled date of the hearing before the Hearing Board were mailed to respondent, but he failed to appear.

Although the order deeming the allegations admitted provided that no further proof was necessary, the Administrator presented the testimony of Manuel Solotke and Ben Stelzer at the hearing as further corroboration of the allegations. In addition, exhibits were introduced which indicated that this court had suspended respondent for three months in 1978 (*In re Chapman* (1978), 69 Ill. 2d 494) for neglecting legal matters entrusted to him and that respondent had been reprimanded in 1979 for an act of neglect which occurred contemporaneously with the misconduct for which he was previously suspended. The Hearing Board found that respondent had intentionally neglected the legal matter entrusted to him by Mr. Stelzer and had wilfully deceived his client regarding the status of his appeal. In light of respondent's previous misconduct of a similar nature, the Hearing Board concluded, as we earlier indicated, that disbarment was warranted and, after respondent failed to file exceptions, the Review Board adopted the recommendation.

Respondent initially argues that his conduct did not amount to a level of neglect sufficient to warrant discipline and that the Administrator failed to present any clear and convincing evidence of fraud, dishonesty, deceit or misrepresentation. We find both of these contentions to be completely without merit. In support of his argument that his conduct did not constitute neglect, respondent sought to establish that our decisions have held that an attorney must totally abandon a legal matter entrusted to him in order to be guilty of neglect and that his failure to meet the briefing deadline was not an abandonment. While some of the cases in which we have

found neglect on the part of attorneys have involved an abandonment of matters entrusted to them (see, *e.g., In re Taylor* (1977), 66 Ill. 2d 567; *In re Simpson* (1971), 47 Ill. 2d 562), abandonment is not a condition precedent to discipline, and we have frequently imposed sanctions for neglect upon attorneys who failed to pursue those matters with reasonable diligence. See, *e.g., In re Kink* (1982), 92 Ill. 2d 293; *In re Levin* (1979), 77 Ill. 2d 205; *In re March* (1978), 71 Ill. 2d 382; *In re Chapman* (1978), 69 Ill. 2d 494.

Furthermore, the only indication that respondent performed any work on the Stelzer appeal following the filing of the record is respondent's assertion that he had begun to prepare a brief to file in conjunction with a motion to vacate the order of dismissal. In view of his failure to file that brief and motion, and his refusal to return calls or otherwise communicate with Mr. Solotke regarding the matter, that assertion does little to mitigate respondent's misconduct in neglecting a legal matter entrusted to him.

We also reject respondent's contention that the Administrator failed to prove by clear and convincing evidence that respondent was guilty of fraudulent conduct. When reassuring Mr. Stelzer that all was well in response to inquiries regarding the status of his appeal, respondent must have been aware that his assurances were untrue in at least one of two respects. Either respondent knew that no further work had been done or was in progress after the filing of the record, or he was aware that he simply did not know the status of the case. In either event, respondent knew that the assurances he was giving Mr. Stelzer were not based upon fact. In these circumstances those assurances constituted a calculated misrepresentation of the truth and were fraudulent. (See *In re Alschuler* (1944), 388 Ill. 492, 504.) Neither the Hearing Board nor the Review Board

regarded Mr. Stelzer's inability to remember respondent's telephone number or the precise dates on which he placed his calls as detracting from the clear and convincing nature of the evidence and neither do we. See *Galapeaux v. Orviller* (1954), 4 Ill. 2d 442, 446; *In re Drescher* (1980), 91 Ill. App. 3d 658, 663; *In re Jones* (1975), 34 Ill. App. 3d 603, 607.

We agree with respondent that the Hearing Board was mistaken when it included in its report a factual finding that respondent had failed to file a record of the trial proceedings in the appellate court. That mistake, however, does not vitiate the report, as the Board's other factual findings were well supported by clear and convincing evidence. Respondent also contends that remarks by the Administrator's counsel in opening and closing statements referring to the disciplinary sanctions previously imposed upon him were prejudicial to him and invalidated the Hearing Board's report and recommendation because the remarks demonstrated that the Administrator was relying upon an uncharged theory of continuing neglect. Examination of the record, however, reveals that the evidence concerning respondent's previous transgressions was considered by the Hearing Board only for the purpose of arriving at their recommendation of an appropriate sanction, a process which this court has approved. See *In re Broverman* (1968), 40 Ill. 2d 302; see also *In re McCallum* (1945), 391 Ill. 400.

Respondent, stating that he did not attend the hearing because he believed that the matter would be determined only on the basis of the allegations of the complaint which he knew were deemed admitted, characterizes as prejudicial error the Board's action in permitting evidence to be introduced. It is unnecessary to decide whether respondent's violation of the duty to attend disciplinary hearings constituted a waiver of any errors (see *In re Simpson* (1971), 47 Ill. 2d 562, 566; *In*

re *Krasner* (1965), 32 Ill. 2d 121, 126), because we think it clear that admitting additional evidence solely to corroborate allegations deemed admitted cannot be considered erroneous. Moreover, nothing in the Board's order indicated that evidence relevant to the allegations in the complaint was precluded. It indicated only that additional evidence would not be required. Too, if respondent's absence from the hearing was for the reason he states, it would seem he would have appeared before the Review Board to argue as he does here.

The Hearing Board, joined by the Review Board, are of the opinion that respondent's misconduct warrants disbarment. Their conclusions, of course, serve only as recommendations, as the final responsibility for selecting an appropriate sanction rests with this court. (*In re Hopper* (1981), 85 Ill. 2d 318; *In re Neff* (1980), 83 Ill. 2d 20; see also *In re Royal* (1963), 29 Ill. 2d 458.) In cases in which attorneys were disciplined for neglect, sanctions imposed by this court have included censure (*In re Kink* (1982), 92 Ill. 2d 293), suspension (*In re Taylor* (1977), 66 Ill. 2d 567), and disbarment (*In re Clark* (1956), 8 Ill. 2d 314). Although it is desirable to impose similar sanctions for similar transgressions (see *In re Clayter* (1980), 78 Ill. 2d 276; *In re Saladino* (1978), 71 Ill. 2d 263), determining the appropriate discipline must also involve, and often turns upon, the unique factors of aggravation and mitigation present in each case (*In re McClennon* (1982), 93 Ill. 2d 215; *In re Hopper* (1981), 85 Ill. 2d 318).

Certainly the hearing and review boards cannot be faulted for recommending disbarment since the misconduct in this case commenced less than a year from the conclusion of the earlier disciplinary proceedings. As this court has frequently stated, however, the dual purpose of our disciplinary system is to safeguard the public and maintain the integrity of the legal profession. (*In re*

*Levin* (1979), 77 Ill. 2d 205; see also *In re Neff* (1980), 83 Ill. 2d 20; *In re Spencer* (1977), 68 Ill. 2d 496.) Respondent's pleading in this court refers to a period of illness, stress and depression, and suggests that he will not in the future handle litigated matters alone if permitted to continue in practice. Our appraisal of all of these factors here is to some extent handicapped by respondent's failure to appear and testify before the disciplinary bodies. He now proposes that we might remand the matter to the Hearing Board to permit the filing of an answer and taking of additional evidence. Answering the complaint and presenting testimony is, of course, the action which respondent should have taken originally. We see no reason, at this late date, to impose upon the dedicated volunteers who serve on our disciplinary boards the burden of scheduling and holding new hearings to permit respondent to do that which he should have done initially.

There are attached to respondent's pleading in this court a number of letters from judges of both State and Federal courts before whom respondent has recently practiced as well as letters from lawyers with whom or against whom respondent has appeared. They indicate respondent enjoys a reputation as a competent attorney possessing considerable ability, has done a significant amount of *pro bono* work, and will, in the opinion of the writers, be able to continue in the practice without further difficulty if permitted to do so.

We would be more comfortable with our decision to permit respondent to continue practicing had he appeared and cooperated in the proceedings at the hearing and review levels for, presumably, we would then have the benefit of respondent's testimony explaining in greater detail the problems which he now asserts he was experiencing. Too, such testimony, accompanied by cross-examination and questioning by panel members, would undoubtedly have clarified factual questions as to which

some disagreement exists.

Despite some uneasiness, we have concluded that disbarment is not necessary, at least at this point. The drinking problem which formerly existed is asserted to be under control, and respondent has apparently been making payments upon the malpractice judgment. Their continuation, we suppose, is to some extent contingent upon respondent's continued ability to practice.

Considering all of the circumstances before us we are persuaded, as we were in *In re Driscoll* (1981), 85 Ill. 2d 312, that a substantial period of suspension accompanied by probation will adequately protect the interests of society and the integrity of the legal profession. *Driscoll*, as is apparent from our opinion in that case, involved facts considerably more egregious than those now before us. We there suspended respondent for six months and required that he thereafter continue his personal program of rehabilitation under the supervision of the Attorney Registration and Disciplinary Commission, reporting to that body as often as required by it. We also invited the Commission to recommend to us the imposition of such additional conditions as it deemed desirable, and noted that the Commission was free under our Rule 755 (73 Ill. 2d R. 755) to call upon other attorneys for assistance. In this connection we observe that the authors of some of the character letters included in respondent's brief indicated a willingness to assist respondent. We noted, too, in *Driscoll*, that experience might result, as it has in other jurisdictions, in revision of our rules to include provisions for supervision or probation in appropriate cases. The supervisory period in *Driscoll* was successfully completed and supervision terminated by us on October 4, 1982. Proposed rules establishing a system of probation have now been referred to our rules committee and will be further considered by us in the near future.

Respondent is accordingly suspended from the prac-

tice of law for a period of two years and until the further order of this court. That suspension is stayed, however, on condition that respondent report to the Attorney Registration and Disciplinary Commission at such intervals and furnish such information as may be required by it, and satisfactorily complete the two-year probationary period. Both the Administrator and respondent may recommend such additional conditions or modifications as may be thought appropriate. Semi-annual reports on respondent's status shall be filed with the clerk of this court by the Administrator, and jurisdiction of this cause is retained pending our further order.

*Probationary suspension ordered.*

JUSTICE MORAN, dissenting:

The majority states that "[c]ertainly the hearing and review boards cannot be faulted for recommending disbarment since the misconduct in this case commenced less than a year from the conclusion of the earlier disciplinary proceedings." (95 Ill. 2d at 492.) I agree, and would therefore adopt the boards' recommendation.

Respondent neglected a legal matter entrusted to him and failed to return the $500 retainer fee. If this were the extent of respondent's misconduct, I would agree that case law supports the sanction herein imposed. However, additional circumstances require harsher discipline than that which is meted out in a typical neglect case.

As noted in the majority opinion, respondent gave assurances to his client which "constituted a calculated misrepresentation of the truth and were fraudulent." (95 Ill. 2d at 490.) A default judgment entered against him in a malpractice suit has not been satisfied. Especially significant is that respondent violated his duty to attend the disciplinary proceeding before the Hearing Board. Although disbarment was recommended, he failed to file exceptions with the Review Board. This behavior mani-

fests the same nonchalant attitude with which respondent has treated his clients' affairs. Further, because of his failure to cooperate with the disciplinary commission, the mitigating circumstances which he urges, and upon which the majority partially relies, cannot be adequately appraised.

Today's opinion nevertheless concludes that the sanction of probationary suspension is sufficient to safeguard the public and maintain the integrity of the legal profession. This conclusion is belied by the fact that respondent has already been disciplined for professional misconduct on two prior occasions. In one instance, he was reprimanded. In 1978, he was suspended for three months for neglecting clients' affairs, the same misconduct with which he is currently charged. (See *In re Chapman* (1978), 69 Ill. 2d 494.) Despite these sanctions, he has persisted in engaging in conduct unbecoming to a member of the legal profession. I am not persuaded that he will conform to professional standards in the future.

Finally, the majority's reliance on *In re Driscoll* (1981), 85 Ill. 2d 312, is misplaced. In that case, respondent was suspended for converting clients' funds during a period of alcoholism, from which he recovered. However, in imposing the sanction of suspension, the court noted that where there is "no detailed evidence to show the attorney's drinking was crucial to his misconduct," disbarment is appropriate. (85 Ill. 2d 312, 315, citing *In re Smith* (1976), 63 Ill. 2d 250.) I fail to see upon what evidence the majority relied in concluding that respondent has controlled his alleged drinking problem, since he failed to appear or introduce any evidence before the disciplinary commission.

Further, the respondent in *In re Driscoll* led an "exemplary life" prior to the misconduct charged in that case. The court considered this factor as a mitigating circumstance. (85 Ill. 2d 312, 317.) That respondent in the

instant case lacks a prior unblemished record is obvious. His inability to accord proper attention to his clients' affairs is equally clear. We should not "permit this respondent to continue the practice of law and thus invite the public to retain the purported services of one to whom the common obligations of his profession mean so little." *In re Feldman* (1982), 89 Ill. 2d 7, 13, quoting *In re Clark* (1956), 8 Ill. 2d 314, 321.

For these reasons, I believe that disbarment, rather than probationary suspension, is the appropriate sanction.

RYAN, C.J., joins in this dissent.