No. 2--05--0610     Filed: 1-25-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| VG MARINA MANAGEMENT CORPORATION, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01--LM--668 |
| FRANK WIENER, | ) ) | Honorable Judith M. Brawka, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Frank Wiener, appeals from the trial court's orders granting summary judgment to plaintiff, VG Marina Management Corporation, on its complaint for rent and awarding plaintiff attorney fees incurred in bringing the complaint. On appeal, defendant contends that (1) the award of attorney fees violates section 5--12--140(f) of Chicago's Residential Landlord and Tenant Ordinance (the RLTO) (Chicago Municipal Code §5--12--140(f) (amended November 6, 1991)), and (2) the lease agreement between the parties is unenforceable because it contains several provisions that violate the RLTO. On February 2, 2007, this court, with Justice O'Malley dissenting, filed its opinion affirming the trial court's judgment. See VG Marina Management Corp. v. Wiener, 371 Ill. App. 3d 201 (2007). We held that the lease agreement was enforceable and that plaintiff was entitled to the recovery of attorney fees under section 5--12--180 of the RLTO (Chicago Municipal Code §5--12--180 (amended November 6, 1991)), as the prevailing party in an action for rent under section

5--12--130(a) of the RLTO (Chicago Municipal Code §5--12--130(a) (amended November 6, 1991)). VG Marina, 371 Ill. App. 3d at 205-08.

In dissent, Justice O'Malley disagreed with the majority's conclusion that the RLTO allowed attorney fees in this case. VG Marina, 371 Ill. App. 3d at 208 (O'Malley, J., dissenting). The dissent noted that plaintiff had never argued that section 5--12--130(a) applied to its case, and the dissent rejected the majority's reliance upon this section as a basis to affirm the trial court. VG Marina, 371 Ill. App. 3d at 210-12 (O'Malley, J., dissenting). The dissent suggested that the parties should have been permitted the opportunity to file supplemental briefs on the applicability of section 5--12--130(a) to the case and stated that "without any input from the parties on this issue, I do not venture a conclusion as to the application of section 5--12--130(a) to this case." VG Marina, 371 Ill. App. 3d at 211 (O'Malley, J., dissenting).

Defendant filed a petition for leave to appeal our decision to the supreme court. On May 31, 2007, the supreme court entered an order denying defendant's petition for leave to appeal. VG Marina Management Corp. v. Wiener, 224 Ill. 2d 594 (2007). However, the supreme court's denial order contained the following directions:

"In the exercise of this court's supervisory authority, the Appellate Court, Second District, is directed to vacate its judgment in VG Marina Management Corp. v. Wiener, 371 Ill. App. 3d 201 (2007). The appellate court is directed to order supplemental briefing on the applicability of section 5--12--130(a) of Chicago's Residential Landlord and Tenant Ordinance, as suggested by the dissenting justice." VG Marina, 224 Ill. 2d at 594-95.

On July 17, 2007, pursuant to this directive, this court entered an order vacating our February 2, 2007, opinion in this case and requiring the parties to file supplemental briefs on the applicability

of section 5--12--130(a) of the RLTO. The parties filed supplemental briefs, and we held oral argument on December 11, 2007. With the benefit of these additional arguments, we now file the following opinion.

On April 19, 2001, plaintiff filed a "complaint for rent." Plaintiff attached to its complaint a copy of the parties' lease agreement. The lease agreement provided that plaintiff leased to defendant a condominium unit located at 300 North State Street in Chicago. In its complaint, plaintiff alleged that defendant vacated the premises and breached the lease agreement by failing to timely make rent payments. Plaintiff sought the recovery of this amount and further alleged that it was "entitled to reimbursement of its fees of counsel and costs incurred in this action pursuant to the Lease." Paragraph 15(e) of the lease agreement provided as follows:

> "Lessee shall pay upon demand all Lessor's costs, charges and expenses, including the fees of agents and others retained by Lessor and, as provided by applicable laws and court rules, the fees of counsel incurred in enforcing Lessee's obligations hereunder or incurred by Lessor in any litigation, negotiation, or transaction in which Lessee causes Lessor, without Lessor's fault, to become involved or concerned."

The parties subsequently filed cross-motions for summary judgment. Defendant did not contest plaintiff's assertion that he had failed to pay rent due under the lease agreement. Rather, defendant argued, inter alia, that the attorney fees provision contained in paragraph 15(e) of the lease was unenforceable under the RLTO and that the lease as a whole was unenforceable as a matter of public policy, by virtue of several lease provisions that violated the RLTO. On September 14, 2004, the trial court denied defendant's motion for summary judgment and granted plaintiff's motion for summary judgment. The trial court also ruled that plaintiff was entitled to an award of attorney fees

and granted plaintiff leave to file a fee petition. On May 19, 2005, after considering plaintiff's petition for attorney fees, the trial court entered judgment against defendant for $30,380.66, consisting of $6,798.82 for unpaid rent, $1,081.84 for costs, and $22,500 for plaintiff's attorney fees. Defendant timely appeals.

Defendant first contends that the trial court erred in granting summary judgment to plaintiff on the issue of attorney fees. As he did at trial, defendant argues that the attorney fees provision contained in paragraph 15(e) of the lease is unenforceable under section 5--12--140(f) of the RLTO. Summary judgment is proper when the pleadings, depositions, and affidavits on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. City of Oakbrook Terrace v. Suburban Bank & Trust Co., 364 Ill. App. 3d 506, 510 (2006). We review de novo the propriety of an order granting summary judgment. City of Oakbrook Terrace, 364 Ill. App. 3d at 510, citing Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992).

The same rules that govern the interpretation of statutes apply in construing municipal ordinances. Starr v. Gay, 354 Ill. App. 3d 610, 612 (2004). As in the case of a statute, the primary objective in construing an ordinance is to ascertain and give effect to the intent of the lawmaking body as disclosed by the language contained in the ordinance. Starr, 354 Ill. App. 3d at 612-13. The best indicator of this intent comes from the language of the ordinance itself, but may also include consideration of the reason behind and the necessity for the ordinance. American National Bank v. Powell, 293 Ill. App. 3d 1033, 1038 (1997) (interpreting the RLTO). The construction and legal effect of the lease agreement and the provisions of the RLTO are questions of law, which we review

de novo. Lawrence v. Regent Realty Group, Inc., 197 Ill. 2d 1, 9 (2001); Plambeck v. Greystone Management & Columbia National Trust Co., 281 Ill. App. 3d 260, 266 (1996).

Prior to considering the merits of defendant's contention, we must first address plaintiff's argument in its supplemental brief that the provisions of the RLTO do not apply to the lease agreement in the instant case. Plaintiff notes that the RLTO applies only to "rental agreement[s] entered into or to be performed after the effective date of this chapter, for a dwelling unit located within the City of Chicago." Chicago Municipal Code §5--12--010 (amended November 6, 1991). Section 5--12--030(a) of the RLTO defines a "dwelling unit" as "a structure or the part of a structure that is used as a home, residence or sleeping place by one or more persons who maintain a household." Chicago Municipal Code §5--12--030(a) (amended November 6, 1991). Plaintiff argues that the condominium unit it leased to defendant was not a "dwelling unit" for purposes of the RLTO because defendant did not maintain a home or household there. Plaintiff argues that defendant was a resident of Madison, Wisconsin, at the time the lease was effective and that he only occasionally used the condominium unit, "when he was in town conducting business."

We find these arguments unconvincing and conclude that the provisions of the RLTO apply to the lease agreement at issue. Section 5--12--030(a)'s definition of a "dwelling unit" has been interpreted to mean "a part of a structure which can be used as a home, residence, or sleeping place, regardless of whether it is being employed as such at the time a lease is signed." (Emphasis in original.) Meyer v. Cohen, 260 Ill. App. 3d 351, 358 (1993). Under this interpretation, actual occupancy of the structure is not required for the RLTO to apply. See Meyer, 260 Ill. App. 3d at 356. Here, the lease agreement provided that plaintiff was leasing to defendant the condominium unit "for a private dwelling." The lease agreement further provided that defendant was obligated to

"occupy and use the Premises during the term as Lessee's private residence." We thus conclude that, regardless of whether defendant actually resided in the condominium unit, it was a structure that could be used as a home, residence, or sleeping place. As such, the condominium must be considered a "dwelling unit" for purposes of the RLTO. Meyer, 260 Ill. App. 3d at 358.

Having determined that the RLTO applied to the lease agreement at issue, we turn to a consideration of defendant's contention that the lease's attorney fees provision violated section 5--12--140(f) of the RLTO. Section 5--12--140(f) provides as follows:

"Except as otherwise specifically provided by this chapter, no rental agreement may provide that the landlord or tenant:

* * *

(f) agrees that in the event of a lawsuit arising out of the tenancy the tenant will pay the landlord's attorney's fees except as provided for by court rules, statute, or ordinance."

Chicago Municipal Code §5--12--140(f) (amended November 6, 1991).

The plain language of this section is clear: a rental agreement may not provide that a tenant agrees to pay attorney fees in connection with a lawsuit, unless such attorney fees are provided for by court rules, statute, or ordinance. The plain language of paragraph 15(e) of the lease agreement does not violate section 5--12--140(f) of the RLTO, because it provides that plaintiff may recover attorney fees incurred in enforcing defendant's obligations under the lease agreement only "as provided by applicable laws and court rules." Accordingly, we read the attorney fees language of paragraph 15(e) of the lease to be in harmony with section 5--12--140(f). See Plambeck, 281 Ill. App. 3d at 267 (holding that a lease containing provision that lessee shall pay costs, expenses, and attorney fees incurred by lessor due to lessee's breach of lease agreement " 'to the extent permissible by Court

rules, Court order, state statute or Local Ordinance' " (emphasis omitted) did not violate section 5--12--140(f) of the RLTO).

Defendant alternatively argues that, even if paragraph 15(e) of the lease does not violate section 5--12--140(f) of the RLTO, the trial court's award of attorney fees was improper because no court rule, statute, or ordinance provided for the recovery of attorney fees in the instant case. The trial court rejected this argument, ruling that section 5--12--180 of the RLTO allowed plaintiff to recover attorney fees. Section 5--12--180 provides that the prevailing plaintiff "in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees." Chicago Municipal Code §5--12--180 (amended November 6, 1991). Defendant argues that the trial court erred in relying on this provision, because plaintiff's complaint did not seek a right or remedy made available under the RLTO, but instead alleged a common-law action for breach of contract.

In this court's earlier opinion, we liberally construed plaintiff's complaint as invoking a remedy under section 5--12--130(a) of the RLTO. VG Marina, 371 Ill. App. 3d at 205. That section provides as follows:

"(a) Failure to Pay Rent. If all or any portion of rent is unpaid when due and the tenant fails to pay the unpaid rent within five days after written notice by the landlord of his intention to terminate the rental agreement if rent is not so paid, the landlord may terminate the rental agreement. *** A landlord may also maintain an action for rent and/or damages without terminating the rental agreement." Chicago Municipal Code §5--12--130(a) (amended November 6, 1991).

We construed plaintiff's complaint to invoke such a remedy despite plaintiff's failure to specifically mention the RLTO or to invoke any of its provisions. VG Marina, 371 Ill. App. 3d at 205. Construing plaintiff's complaint in this manner, we concluded that plaintiff had "prevailed upon its complaint for a remedy 'made available' under the RLTO," and we held that the trial court correctly determined that plaintiff was entitled to an award of attorney fees under section 5--12--180 of the RLTO. VG Marina, 371 Ill. App. 3d at 206. As detailed above, at the direction of the supreme court, we vacated our earlier opinion and allowed the parties to file supplemental briefs as to whether section 5--12--130(a) is applicable to this case.

Plaintiff has not adopted the reasoning of our earlier opinion in its supplemental arguments on remand. During oral argument, plaintiff's counsel specifically argued that section 5--12--130(a) of the RLTO is not applicable to the factual circumstances of this case. Plaintiff's counsel further argued that no other provision of the RLTO provides a remedy in the situation presented in this case: where a landlord seeks to collect back rent from a tenant who has vacated the premises and whose tenancy has expired. Plaintiff's counsel additionally stated in his supplemental brief that plaintiff's complaint was an "action on the Lease for rent" and observed that defendant had conceded that the complaint did not seek a remedy made available in the RLTO.

In view of plaintiff's counsel's own arguments and admissions, we now conclude that plaintiff's complaint did not seek a remedy "made available" under the RLTO. Such a conclusion is consistent with the language of plaintiff's complaint, which alleges simply a breach of the lease agreement and makes no reference to the RLTO. As plaintiff did not seek a remedy under the RLTO, it is not entitled to its attorney fees under section 5--12--180 of the RLTO.

We emphasize, however, that this conclusion is predicated upon plaintiff's characterization of its own pleading and is not based upon our own analysis and construction of the RLTO. Section 5--12--130 of the RLTO provides a landlord remedies for the nonpayment of rent that may or may not be applicable to the underlying facts of this case. See Chicago Municipal Code §5--12--130(a) (amended November 6, 1991) ("A landlord may also maintain an action for rent and/or damages without terminating the rental agreement"); Chicago Municipal Code §5--12--130(h) (amended November 6, 1991) ("If the rental agreement is terminated, the landlord shall have a claim for possession and/or for rent"). In accepting plaintiff's admission that its complaint did not seek to invoke a remedy under the RLTO, we do not consider or adopt plaintiff's interpretation of the RLTO's provisions or their potential applicability to the underlying facts of this case. Rather, we simply accept plaintiff's concession and decline to consider the RLTO as a basis to affirm the trial court's award of attorney fees. See generally Engel v. St. Mary's Hospital of Decatur, 198 Ill. App. 3d 174, 176 (1990) (accepting plaintiff's concession that defendant was properly dismissed from action).

Casting aside any potential remedies provided under the RLTO, plaintiff asserts that its complaint sought a common-law recovery for breach of contract and that it was entitled to the recovery of its attorney fees under the provisions of the lease agreement. Contrary to plaintiff's assertions, however, the lease agreement did not provide the lessor an absolute right to attorney fees. As quoted above, paragraph 15(e) of the lease agreement provided that the lessee would pay the lessor's attorney fees incurred in enforcing the lessee's obligations under the lease agreement "as provided by applicable laws and court rules." Applying the plain language of this provision (Dean Management, Inc. v. TBS Construction, Inc., 339 Ill. App. 3d 263, 269 (2003)), plaintiff was entitled

to collect attorney fees only to the extent that they were provided by applicable law or court rules. Plaintiff has not cited any statute, ordinance, or court rule that would permit it to collect attorney fees in this case; nor has plaintiff cited any case authority providing it a common-law right to recover its attorney fees. As already discussed, plaintiff does not rely on the RLTO as a basis for the recovery of attorney fees. In view of plaintiff's failure to cite any "applicable laws and court rules" to justify an award of attorney fees, we must reverse the trial court's award. Therefore, we conclude that the trial court erred in granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment as to the issue of attorney fees. We reverse that portion of the trial court's order awarding plaintiff $22,500 in attorney fees.

Defendant next contends that two provisions of the lease agreement violated section 5--12--140 of the RLTO (Chicago Municipal Code §5--12--140 (amended November 6, 1991)) and that, as a consequence, the entire lease must be declared void and unenforceable as against public policy. Specifically, defendant alleges that the following lease provisions violated section 5--12--140: (1) the attorney fees provision contained in lease paragraph 15(e), and (2) the holdover-tenant provision contained in lease paragraph 15(b). As we have already discussed, the attorney fees provision of the lease agreement did not violate section 5--12--140(f). See Plambeck, 281 Ill. App. 3d at 267.

As to the holdover-tenant provision of the lease, regardless of whether it violated section 5--12--140 of the RLTO, we reject defendant's argument that the entire lease must be invalidated. Section 5--12--140 provides:

"A provision prohibited by this section included in a rental agreement is unenforceable. The tenant may recover actual damages sustained by the tenant because of the enforcement of a prohibited provision. If the landlord attempts to enforce a provision in

a rental agreement prohibited by this section the tenant may recover two months rent."

Chicago Municipal Code §5--12--140 (amended November 6, 1991).

Thus, the RLTO specifically provides a remedy in the case of a lease provision that violates one or more portions of section 5--12--140. Because plaintiff never attempted to assert against defendant the holdover-tenant lease provision, defendant has not been damaged by the inclusion of this allegedly illegal provision, and we decline his request to expand upon the explicit remedy provided by section 5--12--140. The RLTO is clear in defining a tenant's remedy for the inclusion of prohibited lease provisions, and we decline defendant's invitation to void the lease as a matter of public policy. Cf. Lawrence, 197 Ill. 2d at 11 ("[C]ourts may not rewrite statutes to make them consistent with their own ideas of orderliness and public policy").

Further, even if we were inclined to reexamine the wisdom of the remedies contained in section 5--12--140, we are not convinced that public policy would compel invalidation of the lease in its entirety based upon the challenged provision. Section 184(1) of the Restatement (Second) of Contracts provides that, when some portion of an agreement is unenforceable as against public policy:

> "[A] court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." Restatement (Second) of Contracts §184(1), at 30 (1981).

Although there is a public policy argument in favor of insuring that the provisions of the RLTO are followed, there is also a significant public policy interest in upholding the parties' lease agreement. "[C]omplex, multipart agreements on which there may have been significant reliance should not be

void as a whole solely because some small part is against public policy" (People v. McNett, 361 Ill. App. 3d 444, 448 (2005)), because, absent great inequality or misconduct involving an essential term of the contract, doing so would frustrate the contractual expectations of the parties. Here, defendant fails to relate how the holdover-tenant provision impacted upon his failure to pay rent after voluntarily relinquishing possession of the premises. Defendant also has failed to show prejudice that materially affected the rights of the parties under the lease agreement.

In urging a contrary result, defendant directs us to the Wisconsin Supreme Court's decision in Baierl v. McTaggart, 245 Wis. 2d 632, 629 N.W.2d 277 (2001), in which, he argues, the court voided a lease that contained similar attorney fees language. However, it is well settled that decisions by courts from other states are not binding on courts of this state. Those Certain Underwriters at Lloyd's v. Professional Underwriters Agency, Inc., 364 Ill. App. 3d 975, 981 (2006). To the extent defendant's citation to foreign authority would direct us to a different result, we find it unpersuasive and instead follow the principles of law discussed above.

For the foregoing reasons, we reverse the trial court's ruling granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment on the issue of attorney fees, but we affirm the trial court's judgment in all other respects.

Affirmed in part and reversed in part.

McLAREN and O'MALLEY, JJ., concur.